UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MERLIN S. CAMPO                       CIVIL ACTION

VERSUS                                NO. 06-5050

ALLSTATE INSURANCE COMPANY,           SECTION "C" (1)
ET AL

## OPINION

This trial before the Court without a jury was submitted on the briefs and evidence on May 24, 2010. Having considered the record, the evidence and the memoranda of counsel, the Court finds in favor of the plaintiff, Merlin S. Campo ("Campo") and against Allstate Insurance Company ("Allstate") for the following reasons.

## I.   BACKGROUND

The plaintiff is suing Allstate as a Write-Your-Own carrier participating in the National Flood Insurance Program ("NFIP") alleging that it made negligent misrepresentations after Hurricane Katrina that caused him to fail to renew his flood insurance policy. The crux of the misrepresentation is that Allstate initially approved his claim and recommended awarding him his full policy limits on his Standard Flood

1

Insurance Policy ("SFIP").[1]  It was only after the extended deadline for payment of his renewal fee had expired that Allstate changed positions and declared he had no coverage as the policy had lapsed for failure to renew.  This Court originally determined on summary judgment that the dispute was over the handling of the claim as opposed to procurement of insurance. That ruling was reversed by the Fifth Circuit on appeal, which held "that Campo's claims are related to procurement rather than handling," and "[f]ederal law thus does not preclude Campo from pursuing his procurement-based suit that asserts a state-law cause of action for Allstate's allegedly negligent misrepresentations."  *Campo v. Allstate Insurance Co.*, 562 F.3d 751, 756, 758 (5th Cir. 2009).  "Allstate's representations were allegedly of a kind that could lull parties like Campo into believing that they would receive indemnity without having to submit any additional payment, thus affirmatively dissuading them from paying their delinquent premiums to reinstate expired coverage ... while the shot clock of the grace period ticked away. " *Id.* at 756.  The sole remaining claim presented by Campo for trial arises under Louisiana law.[2]  Specifically, Campo claims that Allstate's negligent

---

[1] The jurisdictional basis is not set forth in the Complaint.  Although the pre-trial order states jurisdiction under 28 U.S.C. §§ 1331, 1337 and 42 U.S.C. § 4072, diversity jurisdiction is also present.  (Rec. Doc. 1, 75).

[2] The plaintiff presents no claim for equitable estoppel.

misrepresentation caused him to forgo paying his premium before the deadline to renew his flood policy expired, and he seeks as damages the amounts in coverage he would have received under the policy had the premium been paid.

Most of the relevant facts are undisputed. In June 2005, Allstate mailed a renewal notice to Campo at his Delacroix Highway home in St. Bernard Parish; it showed an annual premium of $1,237 due on August 13, 2005, the expiration date of the policy. (Exhs. 2, 3; Rec. Doc. 75, p. 6). Campo testified in deposition that it was his habit to pay the premium in person with his agent with cash or money order, that he thought that the last date on which he could pay his premium was September 13, 2005, according to the policy and he was going to pay it in September within the "grace" period. (Exh. 9, pp. 19-23). On August 29, 2005, Hurricane Katrina destroyed Campo's home with its floodwaters. (Rec. Doc. 75, p. 6).

Campo testified that he was unable to pay the premium after the storm because "they wouldn't accept no payments no ways" and because he could not get in touch with his agent. (Exh. 9, pp. 23-24). He also testified in deposition that when he did call Allstate in September, he was told "Don't worry about it. You're covered." (Exh. 9, p. 24). "No, I never knew nothing about making a payment. I figured, you know, I was covered." (Exh. 9, pp. 25-26).

On October 26, 2005, Allstate's Catastrophe Team assessed Campo's flood claim and on October 29, 2005, advised Campo in writing that it had determined his "flood claim will reach or exceed the limit of liability of your policy" and advising Campo that it had requested that the NFIP issue a check for the limits of the policy, $98,200.00 ($72,600/25,600). (Exh. 4; Rec. Doc. 75, p. 7). After receiving the letter, Campo testified that he did not mention the premium because "I figured I was still covered up to the 13th, see..." and that he was covered even though he had not made a payment. (Exh. 9, pp. 29-30). At some unspecified time Allstate also sent Campo an advance payment of $2,500.00. (Rec. Doc. 75, p. 7). During this period, Campo stated he spoke to Allstate representatives several times regarding his claim, always being assured that he was covered.

Because of the storm, the deadline for paying premiums was extended in policies, including Campo's, by the Federal Insurance Administrator until December 15, 2005. (Rec. Doc. 75, p. 7). On December 28, 2005, after the extended deadline for paying his premium had passed, Allstate sent another letter to Campo stating that it was "unable to extend coverage or payment consideration for this reported loss" and

4

requesting that Campo refund the $2,500 advance.³ (Exh. 5). Two separate letters from Allstate to Campo dated January 25, 2006, and January 27, 2006, advised Campo that the claim was being denied because the policy had lapsed on August 13, 2005, and August 13, 2004, respectively. (Exhs. 6 & 7). Allstate sent another letter to Campo dated February 16, 2006, again requesting that the $2,500.00 advance be repaid. (Exh. 8). Campo filed this suit on August 28, 2006.

## II. LAW AND ANALYSIS

*Negligent Misrepresentation*

The parties appear to agree that the state law claim for negligent misrepresentation against Allstate that was recognized by the Fifth Circuit arises under Louisiana law. In order for a plaintiff to establish negligent misrepresentation under Louisiana law, the plaintiff must prove three elements: a legal duty to provide the correct information, breach of that legal duty (misrepresentation), and damages resulting from a justifiable reliance on the misrepresentation. *City Blueprint & Supply Co., Inc. v. Boggio*, 3 So. 3d 62, 66 (La. App. 4th Cir. 2008). Allstate argued for summary judgment in its favor on appeal because "any reliance on its representations was

---

³The Court notes that the address in this letter contained Campo's street address, but contained the city address of New Orleans, Louisiana, not St. Bernard. (Rec. Doc. 5).

unreasonable as a matter of law because Campo had actual knowledge of the policy's expiration." The Fifth Circuit noted:

> And, it is somewhat troubling that Campo knew of his policy's expiration and could have simply paid the premium, but failed to do so. Yet, the district court has already determined that "the error of [Campo's] thinking was compounded by defendant and its actions." We leave to the district court's sound judgment on remand whether a genuine issue of material fact for trial exists.

*Campo*, 562 F.3d at 758, fn. 46.

According to Allstate, because Campo never paid the renewal premium, he can not complain of any misinformation emanating from Allstate. Allstate argues "[f]irst and foremost" that it fulfilled the only duty it had to Campo: to inform him "that his premiums were due and that his policy had lapsed." (Rec. Doc. 83, p. 7). Campo, on the other hand, contends Allstate owed a duty of good faith under La. Civ. Code art. 1983.[4] In Allstate's opinion, it had no duty to act in good faith under La. Civ. Code art. 1983 because there was no contract between it and Campo at the time the October 2005 misrepresentations were made. *Id.* Instead, "[t]he WYO carrier's duty is to accept a payment and issue the SFIP." *Id.* Allstate appears to be arguing that it does not have

---

[4]Article 1983 provides:
Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith.

6

to provide accurate information unless premiums have been paid, although in fact Campo had until December 15, 2005, to make the payment and the misrepresentations were made well before then.

The facts of this case are unusual, and in fact unique in this Court's experience with the myriad of Katrina-related claims. By analogy, however, Louisiana law recognizes a duty on the part of an insurer when that insurer agrees to procure insurance for an individual. *See Karam v. St. Paul Fire and Marine Ins. Co.*, 281 So. 2d 728 (La. 1973). In this case, although Campo did not explicitly state that he wanted to acquire insurance, the inference that it was his intention to renew (therefore procure) his flood insurance is clear. The Fifth Circuit recognized that the reason Campo spoke several times to an Allstate representative between September, 2005, and December, 2005, always inquiring about his insurance policy and always being reassured he was covered was consistent with his intent to ensure that he had flood insurance:

> "[t]he mere fact that Allstate, for a time, mistakenly acted as though a claim existed does not make it so . . . Allstate's alleged misrepresentations occurred when Campo's only relationship with Allstate was that of both a *former* and a *potential future* policyholder . . . we hold that Campo's state-law claims are not related to the handling of an insurance claim, but rather concern a species of insurance procurement."

*Campo*, 562 F.3d at 756.

In general and again by analogy, an "insurance agent who undertakes to procure

insurance for another owes an obligation . . . to use reasonable diligence in attempting to place the insurance requested *and* to notify the client promptly if he has failed to obtain the requested insurance." *Taylor v. Sider*, 765 So.2d 416, 418 (La. App. 4th Cir. 2000) (citing to *Karam*, 281 So.2d at 730) (emphasis added). This Court has also recognized broader duties than merely procuring insurance on the part of an insurance agent, depending on what service the agent holds himself out as performing and the nature of the specific relationship between agent and client. *See Collins v. State Farm Ins. Co.*, 2007 WL 1296240, at *2 (E.D.La. Apr. 30, 2007). For present purposes, insurance cases dealing with insurance procurement in Louisiana that are focused on the agent can also be applied to the insurer. *See Taylor*, 765 So. 2d at 418; *City Blueprint*, 3 So. 3d at 65; *Porter v. Utica Mutual Ins. Co.*, 357 So. 2d 1234, 1237 (La. App. 2nd Cir. 1978). In fact, the Court of Appeal of Louisiana for the Fourth Circuit held that "[i]t is the duty of the *insurer* . . . to take reasonable means to notify the insured of those exclusions which would have a material bearing on his understanding of the coverage he was obtaining." *Sims v. Ins. Unlimited of W. Monroe*, 699 So. 2d 709, 711 (La. App. 2nd Cir. 1996) (emphasis added). In this instance, Allstate repeatedly represented to Campo that he was fully covered without raising in any manner their later position that his policy had expired. These representations certainly had "a material bearing on his understanding" that he

had coverage during the crucial time period prior to December 15, 2005. Under the circumstances here Allstate held itself out to be, in fact, an insurer with a policy in place at the time of the alleged misrepresentations. The Court finds that Allstate had a duty to provide accurate information and not to provide misinformation to Campo. Allstate failed.

Allstate offers no argument concerning breach of its duty, presumably because it so narrowly limits its duty in the first place. Generally, in a procurement case the plaintiff must prove that the insurer agreed to procure insurance, subsequently failed to procure the insurance, neglected to inform the client of this failure, and that the insurer's actions led the client to assume that he was insured. *Taylor*, 765 So. 2d at 418.

The Court finds that plaintiff has proven a breach of this duty in a number of respects. First, on multiple occasions, Allstate implicitly affirmed that Campo was covered. Although the policy itself was in limbo at the relevant time, Allstate's actions were based on the assumption of the existence of a valid policy, and Allstate conveyed that clearly to Campo. Second, Allstate had mammoth resources in place, and should have discovered that Campo had not paid the premium and then should have informed Campo that he had additional time within which to do so. Third, the clear language of Allstate's letters, phone calls, advance payment, and insurance inspectors certainly led

Campo to assume that he not only had a policy, but that his loss was covered under that policy.

The failure to obtain flood insurance for a customer is a breach of duty when it was apparent that the customer wished the same coverage to be applied to one property that applied to another, which included flood insurance. *Durham v. McFarland, Gay and Clay*, 527 So. 2d 403, 406-07 (La. App. 4th Cir. 1988). That court held that even though there was no specific evidence that the customer explicitly asked the agent to obtain flood insurance, given the circumstances, it was obvious that the customer intended for the same coverage, which included flood insurance, to be applied to his other property and that therefore the agent breached his duty in failing to procure it. *Id.* at 407. Additionally, an insurance agent's failure to advise an insured of needed flood insurance even if the insured does not directly request flood insurance is a breach of duty. *Roby v. State Farm Fire & Casualty Co.*, 464 F.Supp. 2d 572, 579 (E.D.La. 2006). Under the circumstances presented, all of Allstate's making, the Court finds that Allstate's failure to inform Campo, on several occasions, that the policy had lapsed was a breach of duty and misrepresentation. The fact that Allstate affirmatively represented that the loss was covered would constitute an additional material misrepresentation which caused him to believe paying the premium was unnecessary.

Again, Allstate personally inspected the house and the contents, formally confirmed by letter its intent to recommend payment of the full policy limit, sent Campo an advance on the policy, and had several conversations with Campo, all of which assured him that he was covered under the policy without further action on his part.[5] Therefore, the Court finds that the plaintiff has proven by a preponderance of the evidence the first two elements of its claim for negligence: a legal duty to provide the correct information and a breach of that legal duty with its misrepresentation.

Thankfully, Allstate acknowledges that the third element, regarding the plaintiff's reliance, is a "credibility test." (Rec. Doc. 83, p. 8). At trial, the credibility is weighed by the trier of facts and, in this instance, the evidence weighs heavily in favor of the plaintiff. The Court finds the plaintiff's testimony entirely credible as to the representations made to him by Allstate between August 29, 2005, and December 15, 2005. Allstate seems to argue that Campo should have been more selective in what he relied upon; that he should have relied only upon Allstate's initial premium renewal notice and ignored all the subsequent communications with Allstate in which Allstate

---

[5] As this Court previously noted when denying both parties' summary judgment motions, Allstate's actions during this period were "at best bungling and at worst deliberately laying in the gap until the time for the renewal payment had expired." (Rec. Doc. 68 at 3, n.1).

11

repeatedly assured him he was covered. Those assurances only ended after December 15, 2005, when it was too late for Campo to pay the premium. That is simply untenable. "To hold otherwise would permit insurers like Allstate to ensure unilaterally that disputes be classified as preempted handling-related suits by simply acting as though they were handling claims when in fact none existed as a matter of law." *Campo*, 562 F.3d at 756.

In arguing that Campo's reliance on Allstate's correspondence was not justifiable under the law, the defendant relies in part upon two United States Supreme Court cases. *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51 (1984); *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947). Those cases recognize that an insured has the duty to know the terms and conditions of his insurance policy. However, when the Fifth Circuit declined to decide if it is ever possible for a renewal-based claim to be classified as claims handling, it stated that the "SFIP provides no remedy for the specific situation [this situation] in which an insurance company acts as though it is handling a claim until the insured's grace period expires, and then, as soon as the grace period expires, denies coverage." *Campo*, 562 F.3d at 756, fn.34. Allstate can not show here that a close reading of the policy provisions would have provided any clarity to Campo.

Allstate's reliance on two additional cases to support its argument for the unreasonableness of Campo's reliance are likewise not persuasive. In *City Blueprint*, the court again relied on clear policy language excluding the coverage sought by the plaintiff. 3 So. 3d at 65. Here, not only does the policy not address the unique circumstances, Allstate's written October 2005 advice that Campo *would* receive payment under the policy was clear. Similarly, in *Vanek v. Seeber*, 29 So.3d 582 (La. App. 1st Cir. 2009), the plaintiff was aware of the redhibitory defect despite any allegedly misleading statements by the defendant. Here, all of Allstate's misrepresentations were before the extended deadline for the payment of premiums had expired. At no time after Campo made his claim did Allstate advise him that anything further was required of him, on the contrary all the while Allstate assured him he was covered.[6]

The Court finds that the plaintiff has proven well beyond a preponderance of the evidence that his reliance on Allstate's misrepresentations was justifiable. There has been no suggestion that Campo would not have paid the premium had Allstate

---

[6]The Court takes issue with Allstate's occasional implication that it is the victim here. At no time did Campo misrepresent anything to Allstate; Campo was entirely reasonable in assuming that Allstate was fully informed of the status of its policy. At all times Allstate certainly enjoyed the greater resources and bargaining position, and never suggested that the coverage it granted was still contingent on the pre-payment of the premium.

provided accurate information to him. Ironically, Campo was sent an advance on his recovery, which was in excess of the premium owed.

The fact that Campo knew that at the earlier time the premium was due is largely historical given the subsequent catastrophe wrought by Katrina, and the defendant's later actions, words, and representations. In this regard, the Court finds not only that the plaintiff's reliance was reasonable, but perhaps legally justified. The Court finds that it is entirely reasonable, for instance, for an insured to assume that the premium due would be offset against the recovery under the policy.[7]

In sum, this Court finds that the plaintiff has proved by a preponderance of the evidence that Allstate had a duty to provide accurate information to Campo, that Allstate breached that duty by providing incomplete information regarding the payment of the premium and incorrect information about coverage, that Campo justifiably relied on that information in failing to pay the premium within the extended deadline and that Allstate's negligent misrepresentation has caused him damages.

---

[7]For instance, La. Civ. Code art. 1893 provides:
Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due.
In such a case, compensation extinguishes both obligations to the extent of the lesser amount.
Delays of grace do not prevent compensation.

*Federal Funds*

Allstate finally argues that the plaintiff is making an estoppel claim, which would allow it to argue how this is a matter borne by the United States Treasury based on the affidavit of Jason Raske, the Flood Field Manager for Allstate, stating that FEMA has reimbursed all sums expended in defense of this claim under an "Arrangement" promulgated by FEMA to which Allstate is a signatory. This argument was first presented and rejected on motion for summary judgment post-appeal. (Rec. Docs. 53, 68).

On appeal, the Fifth Circuit advised as follows:

> When claimants sue their WYO carriers for payment of a claim, carriers bear the defense costs, which are considered "part of the ... claim expense allowance"; FEMA reimburses these costs. Yet, if "litigation is grounded in actions by the [WYO] Company that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence," then such costs will not be reimbursable to the WYO carrier.

*Campo*, 562 F.3d at 754. "FEMA does not reimburse carriers for procurement-related judgments." *Id.* at 758. "'The Administrator of [FEMA] may not hold harmless or indemnify an agent or broker for his or her error or omission.'" *Id.*, *quoting* 42 U.S.C. § 4081(c ). Allstate advises that only the Federal Insurance Administrator, "not this Court and certainly not the Plaintiff" can determine if Allstate's conduct falls outside of the Arrangement. (Rec. Doc. 83, p. 15).

The Court has no disagreement with the legal proposition that a claim for equitable estoppel is not available to this plaintiff. Neither did the Fifth Circuit on appeal. *Id.* at fn. 46. Nonetheless, the argument that FEMA's payment policies ultimately determines whether the plaintiff has a legal claim is unpersuasive.[8] Whether FEMA decides to pay Allstate's counsel's fees or not cannot strip Campo of the judicial relief he deserves.

Accordingly,

IT IS ORDERED that judgment be entered in favor of the plaintiff, Merlin S. Campo, and against the defendant, Allstate Insurance Company, in the amount of $98,200.00, with interest from the date of judicial demand.

New Orleans, Louisiana, this 23rd day of July, 2010.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

---

[8]The affidavit of Allstate's Flood Field Manager does not appear in the benchbook of exhibits.